IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN MARTIN PATTON, JR.,

Plaintiff,

v.                                                           Case No.  23-3096-JWB

GRANT SPARKS, *et. al.*,

Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant Grant Sparks' and the city of Merriam's motion for summary judgment.  (Doc. 108.)  The motion is fully briefed and ripe for decision. (Docs. 109, 124, 127.)  The motion is GRANTED for the reasons stated herein.

I.      **Facts[1]**

Defendant Sparks was a patrol officer for the Merriam Police Department.  On September 20, 2020, he responded to a call to investigate a suspicious vehicle on Craig Road.  When Sparks arrived, he saw the vehicle parked in a no parking zone with its break lights activated.  After he pulled behind the vehicle, it started to move forward.  Sparks recalled that there had been vehicle break-ins and thefts in the area recently, so he decided to stop the vehicle given its suspicious movement forward after he pulled behind it.  (Doc. 109 at 6–7; Doc. 124 at 1–3.)

After stopping Plaintiff's vehicle, Sparks walked up to the driver's side window.  Plaintiff and his passenger Justin Wimmer were sitting in the front two seats of the vehicle.  Sparks asked Plaintiff if he lived in the area, to which Plaintiff responded that he did not.  Sparks also observed

---

[1] The following facts are deemed uncontroverted and admissible.  The court notes that Plaintiff attempted to controvert almost all of Defendants' factual assertions.  However, he either failed to properly controvert them or raised concerns about non-material discrepancies.

that Wimmer's eyes were bloodshot, his face was covered in scabs, and he had what appeared to be injection marks on his hands. Sparks then asked for Plaintiff's driver's license. Plaintiff responded that he did not have a driver's license because he was not driving commercially and was free to travel. Sparks then asked if there were any drugs or weapons in the vehicle, and Plaintiff responded that there were none. (Doc. 109 at 7–8; Doc. 124 at 3–5.)

Once Plaintiff and Justin Wimmer identified themselves, Sparks returned to his patrol vehicle.[2] Police dispatch informed Sparks that Plaintiff was a registered sex offender and had a suspended driver's license. Sparks then returned to the vehicle. He asked Plaintiff to step out of the vehicle in order to answer some questions. (Doc. 109 at 8; Doc. 124 at 4–6.)

Sparks asked Plaintiff again if there were any drugs or weapons in the vehicle. Plaintiff replied that there not. However, when Sparks asked Wimmer to get out of the vehicle, a needle with brown and red residue became visible on the floorboard of the vehicle. At this point, Sparks detained Plaintiff and placed him in handcuffs because of the drug paraphernalia in plain view in his vehicle. After Plaintiff and Wimmer were secured, Sparks searched Plaintiff's vehicle. In addition to the needle on the floorboard, Sparks discovered a Pepsi can cut in half with burnt marks, two tourniquets, a needle and syringe loaded with a brown substance (suspected to be methamphetamine), a razor blade in a baggie, a baggie of cotton swabs, marijuana and associated paraphernalia, an eyeglass case with a needle sticking out of it, a box with additional needles, a needle with white residue, an empty baggie with brown residue, an opioid overdose kit, and a BB gun that resembled a real handgun. (Doc. 109 at 8–9; Doc. 124 at 7–10.)

---

[2] There is a dispute as to how Plaintiff and Wimmer identified themselves. Defendant Sparks asserts that both Plaintiff and Wimmer verbally identified themselves. However, Plaintiff asserts that he gave Sparks his expired driver's license. The method by which Plaintiff and Wimmer identified themselves is immaterial because there is no suggestion that Defendants are mistaken as to who was sitting in Plaintiff's vehicle.

More officers arrived at the scene. Plaintiff complained to a different officer that the handcuffs were causing him pain. In response, the officer double-cuffed the handcuffs in order to relieve pressure on Plaintiff's neck and shoulder. Double-cuffing is when two sets of handcuffs are hooked together so there is less pressure on the handcuffed person's neck, shoulder, and back. Because Plaintiff's handcuffs had been extended with the double-cuffing, he was able to move his handcuffed hands to his front. Even with the double-cuffing, Plaintiff asserts that he experienced pain from being handcuffed. (Doc. 109 at 10–11; Doc. 124 at 10–11.)

Both Plaintiff and Wimmer were transported to the Merriam Police Station. Sparks transported Wimmer, and a different officer transported Plaintiff. At the station, Plaintiff was argumentative and uncooperative. Sparks placed him in a holding cell. Based on the facts presented, when Sparks placed Plaintiff in the holding cell, it seems that he removed the handcuffs from Plaintiff. At this point, Plaintiff complained directly to Sparks about the neck pain he was experiencing because of the handcuffs. Sparks contacted emergency medical services for Plaintiff, but Plaintiff refused treatment and insisted on being seen only by a licensed doctor. (Doc. 109 at 11–13; Doc. 124 at 15–16.)

Both Plaintiff and Wimmer needed to be transported to the county jail for processing and booking. Once Sparks secured Wimmer in his vehicle for transport to the county jail, he came back to secure Plaintiff for transport as well. Sparks informed Plaintiff that he needed to handcuff him during the transport. He secured Plaintiff with the double-cuff method. When Sparks arrived with Plaintiff and Wimmer at Olathe Central Booking, he relinquished custody of them to the Johnson County Sheriff. (Doc. 109 at 13–14; Doc. 124 at 16–18.)

Prior to Plaintiff's arrest on September 20, 2020, he had been experiencing pain in his neck for more than a year. And on September 17, 2020, Plaintiff went to the emergency room for neck

3

pain that was also radiating to his arm.  The doctors gave him pain medication.  Plaintiff has no evidence that handcuffing him on September 20 worsened any injury to his neck, much less evidence that he had been suffering from a legitimate neck injury. (Doc. 109 at Doc. 124 at 18–19.)

Plaintiff brings three claims pursuant to 42 U.S.C. § 1983.  Two are against Sparks: a Fourth Amendment claim for excessive force, and a Fourteenth Amendment claim to be free from cruel and unusual punishment. The third claim is against the city of Merriam, Kansas.  It is a *Monell* claim for lack of training.  (Doc. 13 at 3–4.)

## II.  Standard

Summary judgment is appropriate if the moving parties demonstrate that there is no genuine dispute as to any material fact and the movants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.  *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006).  The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies.  D. Kan. R. 56.1(a).  "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id.*  To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1).  Failure to properly controvert a proposed fact that is properly supported

will result in a determination that the fact is admitted.  *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) (finding that the "district court was correct to admit all facts asserted in Blue Cross's summary judgment motion that are not controverted by a readily identifiable portion of the record.") (internal quotation and citation omitted).

Furthermore, the court is required to liberally construe Plaintiff's pleadings because he proceeds pro se.  *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).  However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Plaintiff's behalf.  *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

## III.    Analysis

### A. Defendant Grant Sparks

The court first addresses Plaintiff's claims against Sparks because if Plaintiff did not suffer a constitutional violation, then the court need not address his *Monell* claim against Merriam.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

#### 1. Fourth Amendment Excessive Force Claim

Plaintiff's first claim is a § 1983 excessive force claim pursuant to the Fourth Amendment.[3] (Doc. 13 at 3.)  It is premised upon Defendant Sparks' use of handcuffs.  (*Id.* at 6–7.)  Plaintiff argues that when Defendant Sparks handcuffed him, it was very painful and exacerbated a previous neck injury.  (Doc. 124 at 34.)

Sparks raises qualified immunity as a defense against Plaintiff's Fourth Amendment § 1983 claim.  "Individual defendants named in a § 1983 action may raise a defense of qualified immunity."  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).  Qualified immunity "shields public officials ... from damages actions unless their conduct was unreasonable

---

[3] The constitutional right at issue in an excessive force claim arising from an arrest is the Fourth Amendment right against unreasonable seizures.  *See Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020).

5

in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

Defendants put forth multiple arguments as to why the court should summarily dismiss Plaintiff's excessive force claim on the basis of qualified immunity. They raise two arguments for why Sparks did not violate Plaintiff's constitutional rights: (1) his use of force was reasonable under the *Graham* factors set forth in *Graham v. Connor*, 490 U.S. 386, 396 (1989), (Doc. 109 at 19–22), and (2) Plaintiff failed to allege that handcuffing him caused a non-de minimis injury. (*Id.* at 19.) Additionally, they argue that even if Spark's use of handcuffs was unreasonable, and Plaintiff suffered an actual injury from their use, he cannot identify that his right against excessive force was clearly established on September 20, 2020. (*Id.* at 17–18.)

Both Plaintiff and Defendants rely on the *Graham* factors to assess whether Spark's conduct was reasonable. (Doc. 109 at 20; Doc. 124 at 28; Doc. 127 at 9.) Although this is the correct balancing test for determining the reasonableness of Sparks' actions, *see Donahue*, 948 F.3d at 1196 (explaining that the *Graham* factors are used to assess the reasonableness of an officer's actions in an excessive force claim), the Tenth Circuit has determined that "[a]n excessive force claim that includes a challenge to the '[m]anner or course of handcuffing' requires the plaintiff to show both that 'the force used was more than reasonably necessary' and 'some non-de minimis actual injury.'" *Id.* at 1196 (quoting *Fisher v. City of Las Cruces*, 584 F.3d 888, 897–98 (10th Cir. 2009)). The showing of a non-de minimis injury is necessary because when an officer can lawfully arrest a person, "handcuffing is [typically] appropriate" but "the *manner* of

handcuffing may render the application of force excessive." *Fisher*, 584 F.3d at 896 (emphasis in original). In those cases, according to the Tenth Circuit, "the *Graham* factors are less helpful in evaluating the *degree* of force applied," so "an examination of the resulting injury supplements [the court's] inquiry." *Id.* at 896–97 (emphasis in original). The court notes that a non-de minimis actual injury is not purely supplemental, though. It is a requirement in handcuffing excessive force claims. *Donahue*, 948 F.3d at 1196.

Under Tenth Circuit law, actual non-de minimis injuries appear to be permanent injuries that can be demonstrated via medical records or doctors' notes. *See id.* For example, in *Vondrak v. City of Las Cruces*, 535 F.3d 1198 (10th Cir. 2008), the court concluded that the plaintiff suffered an actual injury because multiple doctors diagnosed him with permanent nerve damage to his wrists as a result of being handcuffed. *See id.* at 1209. By contrast, mere assertions of pain and pictures of alleged bruising are insufficient to demonstrate an actual injury. *See e.g., Donahue*, 948 F.3d at 1197. Furthermore, plaintiffs cannot solely rely on their affidavits to describe their pain and injuries. *See id.* (citing *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007)).

Hence, when a plaintiff raises an excessive force claim involving handcuffs, the defendant needs to show that the use of handcuffs was justified, and the plaintiff must demonstrate through medical evidence that he suffered an actual non-de minimis injury.

Here, the uncontroverted facts indicate Sparks was justified in handcuffing Plaintiff. Sparks arrested Plaintiff for possession of methamphetamine, heroine, drug paraphernalia, and driving with a suspended license. (Doc. 109 at 20.) The crimes of possessing methamphetamine and heroine are class five felonies under Kansas law. K.S.A. § 21-5706(c)(1). Hence, these crimes alone justified Sparks' use of the handcuffs. *See Lewis v. Sandoval*, 428 F. App'x 808, 811 (10th Cir. 2011) (identifying aggravated fleeing, a class four felony under New Mexico law, as an

offense that justified handcuffing the plaintiff). With regard to Plaintiff's burden, he failed to demonstrate that he suffered an actual non-de minimis injury. Indeed, he cites no medical evidence that he suffered permanent damage because of the handcuffs or that they caused further damage to his alleged neck injury. He merely claims to have been in pain while handcuffed.

Therefore, the court grants Defendants' motion for summary judgment on Plaintiff's Fourth Amendment excessive force claim. Sparks is entitled to qualified immunity because Plaintiff failed to establish a constitutional violation.

### 2. *Fourteenth Amendment Cruel and Unusual Punishment Claim*

Plaintiff also brings a Fourteenth Amendment cruel and unusual punishment claim. Plaintiff's Fourteenth Amendment claim is premised on the same facts as his Fourth Amendment excessive force claim: that Defendant Sparks allegedly tortured him by (1) handcuffing him when he was placed under arrest, and (2) keeping the handcuffs on him while at the scene and during the booking process. (*See* Doc. 13 at 4, 8–9.) Defendants do not question whether Plaintiff properly brought a Fourteenth Amendment claim; instead, they plow forward with analyzing Plaintiff's cruel and unusual punishment claim under the Fourteenth Amendment's Due Process Clause. (Doc. 109 at 23–24.) The court, however, is unsure Plaintiff's asserted facts support a Fourteenth Amendment due process claim against cruel and unusual punishment.

As an individual progresses through the criminal justice system, different constitutional amendments offer protection at various stages. For example, at one end is the Fourth Amendment. It applies "to the events leading up to and including an arrest of a citizen previously at liberty." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). Excessive force claims arising from events that occur during this period are analyzed under the Fourth Amendment. At the other end is the Eighth Amendment's Cruel and Unusual Punishment Clause. Convicted prisoners pursue

excessive force claims under this clause. *See Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). Between arrest and conviction lies pretrial detainment. At this stage, when a person is detained and waiting trial (i.e., "an arraigned pretrial detainee"), "the due process clauses of the Fifth and Fourteenth Amendments [are] their protection against arbitrary governmental action by federal or state authorities." *Porro*, 624 F.3d at 1326. Notably, the pretrial detainee in *Porro* had been arraigned. *See id.*

Thus, in order for Plaintiff to proceed with his Fourteenth Amendment claim, he would have to show that he had transitioned from arrestee to pretrial detainee while in the custody of Sparks. Upon review of the factual record, neither Defendants nor Plaintiff assert facts that indicate this lawsuit extends to events occurring after Plaintiff became a pretrial detainee. Indeed, Plaintiff's claims center around Sparks' use of handcuffs during the arrest up until he was booked and taken into custody by the Johnson County Sheriff—in other words, when Plaintiff was an arrestee. (Doc. 109 at 13.) Hence, because the facts giving rise to Plaintiff's lawsuit do not extend to events following his arraignment, the court finds that his Fourteenth Amendment is an excessive force claim properly brought under the Fourth Amendment, with which this court has already dispensed.

Plaintiff cannot have two bites at the apple. Therefore, Plaintiff's Fourteenth Amendment cruel and unusual punishment claim is also summarily dismissed.

### B. Monell Claim Against City of Merriam

The court need not assess Plaintiff's Monell claim against Merriam because Defendant Sparks did not violate Plaintiff's constitutional rights. *See Heller*, 475 U.S. at 799; *see* Section III.A and III.B. Therefore, Plaintiff's *Monell* claim against Merriam is also summarily dismissed.

**IV.     Conclusion**

Therefore, Defendants' motion for summary judgment is GRANTED.  Plaintiff's motion for an extension to file a response to Defendants' summary judgment motion (Doc. 115) is DENIED AS MOOT.  His motion for leave to file a supplemental brief, or alternatively, a surreply to Defendants' reply brief (Doc. 128) is also DENIED AS MOOT.

IT IS SO ORDERED.  Dated this 31st day of July, 2025.

s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE